### In re HARRINGTON.

(District Court, W. D. Missouri, W. D. June 25, 1924.)

**1. Internal revenue ⬤═➞7—Owner of corporate stock known to be worthless entitled to credit, without awaiting formal termination of receivership.**

Owner of corporate stock known to be worthless is entitled to credit in computing net income, without awaiting formal termination of receivership.

**2. Internal revenue ⬤═➞7—Income of engineering partnership properly computed on completed contract basis.**

Computation of income of engineering partnership on completed contract basis under Income Tax Act, §§ 212, 213 (Comp. St. Ann. Supp. 1923, §§ 6336⅛f, 6336⅛ff), supplemented by Regulations No. 45, arts. 22, 36, *held* proper, where contracts extended over period of years.

**3. Internal revenue ⬤═➞7 — Fundamental purpose of law that taxpayer should be taxed on actual income, and regular method of accounting should be indulged.**

Fundamental purpose of Income Tax Law is that taxpayer should be taxed on his actual income, and that this should neither be diminished nor increased by any arbitrary or artificial method of computation, and regular methods of accounting employed by taxpayer, established in due course and for no ulterior purpose, are to be indulged.

In Bankruptcy. In the matter of John Lyle Harrington, bankrupt. On petition for review of order of referee disallowing government's claim for taxes. Order affirmed.

Rees Turpin, of Kansas City, Mo., for bankrupt.

Miller, Winger & Reeder, Frank P. Barker, and Alton Gumbiner, all of Kansas City, Mo., for trustee.

C. C. Madison, U. S. Dist. Atty., of Kansas City, Mo., for the United States.

VAN VALKENBURGH, District Judge. The government claims additional income tax due from the bankrupt as follows:

| | |
|---|---|
| 1918 | $4,752.15 |
| 1919 | 168.18 |
| 1922 | 85.93 |
| Total | $5,006.26 |

The referee disallowed this claim, and found that the bankrupt had already overpaid the government $716.38 for the year 1918, and ordered the trustee, on behalf of the estate in bankruptcy, to prosecute a claim for refund of this amount before the Bureau of Internal Revenue. It is conceded that the government is not entitled to recover the sum of $85.93 for the year 1922, because of the intervention of bankruptcy. The items for the years 1918 and 1919 depend primarily upon three considerations.

[1] I agree with the referee that the bankrupt was entitled to credit in the sum of $10,990 in the year 1918 for the cost of common stock in the Altoona Cement Company; said company was insolvent and had suspended operations prior to July, 1918. The common stock was known at that time to be worthless, and a satisfactory showing was made of its worthlessness. In such cases it is unnecessary to await the formal termination of the receivership, which occurred in 1919.

I agree with the referee that the bankrupt was entitled to a deductible loss, in computing his income for the year 1919, of the sum of $53,609.36, arising from farming operations, and that the records are sufficient to enable the government and the court to determine accurately the receipts and disbursements covering the bankrupt's farming operations for the year 1919.

[2] The remaining consideration pertains to the manner in which the partnership, of which the bankrupt was a member, should make its income tax return, which is made material because it bears upon the bankrupt's distributive share in said partnership earnings. I agree with the referee that the said partnership was entitled to compute its income on the completed contract basis. Sections 212 and 213 (Comp. St. Ann. Supp. 1923, §§ 6336⅛f, 6336⅛ff) primarily apply, and cover income derived from personal service, profession, vocations, trades, and businesses. Subdivision B of section 212 provides that:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the

method of accounting regularly employed in keeping the books of such taxpayer."

This was supplemented by article 36 of Regulations No. 45, which is to be taken as having been made pursuant to statutory authority, and therefore having the full force of law. Article 36, under the heading "Long Term Contracts" provides:

"Persons engaged in contracting operations, who have uncompleted contracts, in some cases perhaps running for periods of several years, will be allowed to prepare their returns so that the gross income will be arrived at on the basis of completed work; that is, on jobs which have been finally completed any and all moneys received in payment will be returned as income for the year in which the work was completed."

This was the law in effect at the time the partnership return was made, and for the year for which an additional claim for income tax is made. By a later regulation the Internal Revenue Department has sought to restrict the operation of the law and the former regulation to building contracts, which would exclude the engineering contracts of the bankrupt firm. Concerning this later act the Attorney General has said:

"The point raised is that the Revenue Act of 1921 reflects legislative intent expressed in the Revenue Acts of 1916, 1917 and 1918. But the act of 1921, in my opinion, was not a declaration of an intent already exhibiting, but obscure ·in the law; it was rather a change of the prior legislative rule."

This accords with the view of the Supreme Court in Gould v. Gould, 245 U. S. loc. cit. 153, 38 S. Ct. 53, 62 L. Ed. 211, to wit:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

Article 22 of Regulations 45 provides:

"The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such manner as clearly reflects the taxpayer's income. If the method of accounting regularly employed · by him in keeping his ·books clearly reflects his income, it is to be followed with respect to the time as to which items of gross income and deductions are to be accounted for."

[3] This is, of course, the fundamental purpose of the law that the taxpayer should be taxed upon his actual income, and that this should neither be diminished nor increased by any arbitrary or artificial method of computation. As the law says, "the true income must be clearly reflected," and for this purpose the regular and long-standing methods of accounting employed by the taxpayer, established in due course and for no ulterior purpose, are to be indulged. In this case it is shown beyond dispute that the firm of which the bankrupt was a member had employed the long term basis as its method of computing its profits on its engineering contracts; these uniformly extended over a period of years. The firm contracts to do the engineering work for a stated sum, depending, of course, upon certain contingencies. From the gross amount it is to receive must be deducted its expenses, consisting of many items, including salaries of subordinates and the establishment of an engineering staff and the outlay incidental thereto. The contract fee in no wise reflects the net income. In some years there may be payments on account of fees and small expenses, and in others the expenses are large and the payments on account of fees are negligible. The true profit cannot be estimated until the completion of the work. The method employed by the taxpayer in this case is the logical one and accords with the· justice of the case and the law applicable thereto at that time.

It is urged that this engineering firm had many contracts arriving at completion at many different periods, and for this reason the work of computing the income upon the long term basis would be complex and unsatisfactory. But, if the books are kept, as the record shows they are, to show the exact state of the income upon completed contracts in each year, it is not perceived how greater difficulty can arise in the case of engineers than in that of building and construction work generally. Furthermore, the government does not seek to secure a return upon income which is not accurate in fact and which casts an unjust burden upon the taxpayer.

For the foregoing reasons, I am of opinion that the ruling of the referee was in accordance with the law and justice of the case, and his orders are accordingly affirmed.