**DRESSER et al. v. UNITED STATES.**
**No. H-362.**

Court of Claims.
Jan. 18, 1932.

WILLIAMS, Judge, dissenting.

Robert B. Dresser, of Providence, R. I. (Robert E. Jacobson, of Providence, R. I., and Joseph Fairbanks, of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen (George A. Mathers and Charles B. Lingamfelter, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, and WILLIAMS, Judges.

LITTLETON, Judge.

There are five issues in this case. The first four are all substantially the same, and are whether the decedent sustained deductible losses in 1918 and 1919 upon the acquisition by him in these years of certain shares of stock of the East Providence Water Company, the Nitrogen Products Company, the Nitrogen Corporation, and the Erie Specialty Company. The fifth question is whether the decedent was entitled to a deduction of $243,-579.33, or any other amount, for the calendar year 1919 as a loss on 7,500 shares of common stock of Clarence Whitman & Co., Inc., resulting from the liquidation of that corporation.

The first four issues are rested by plaintiffs upon the proof which establishes that the outstanding and issued capital stock of these corporations prior to January 1, 1918, and January 1, 1919, was worthless and that stock acquired by the decedent during 1918 and 1919 was worthless at the time of

its acquisition, and that the amounts paid by him for the stock in 1918 and 1919 were losses sustained by him at the time the stock was acquired and were deductible under section 214 (a) (5) of the Revenue Act of 1918, 40 Stat. 1057, 1067, which provides: "That in computing net income there shall be allowed as deductions: * * * Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * *" No deduction is claimed on account of the stock of these corporations acquired by the decedent prior to the years 1918 and 1919 for the reason that such stock was worthless prior to those years. These transactions do not fall under subdivision (4) of section 214 (a) as losses "incurred in trade or business," and they are not claimed under that subdivision. Neither did the transactions in question give rise to a deductible loss for tax purposes under subdivision (5) of section 214 (a) of the Revenue Act of 1918, inasmuch as the facts establish that the acquisitions of stock of these corporations were not "transaction entered into for profit." Before a deduction can be taken under this subdivision, it must be established that the loss claimed resulted from a transaction entered into for profit. If a taxpayer chooses to pay or contribute money in any transaction, which, under all the circumstances known to him at the time, is a hopeless venture, and from which he has no reasonable expectation of profit, he is not entitled to take the amounts paid or contributed as a deduction from income for tax purposes. A loss, in order to be deductible under the statute, must be an unintentional parting with something of value. The evidence establishes and we have found as a fact that the decedent was familiar with the affairs and conditions of the business of the corporations, the stocks of which are involved in these issues, and that the acquisitions in 1918 and 1919 of the stocks thereof were not transactions entered into for profit. The losses claimed for 1918 of $177,800 on account of 3,232 shares of stock of the East Providence Water Company, $48,500 on account of 485 shares of stock of the Nitrogen Products Company, and $17,500 on account of 175 shares of the Nitrogen Corporation, and the losses claimed for 1919 of $40,950 on account of 615 shares of stock of the Erie Specialty Company, and $22,500 on account of 225 shares of the Nitrogen Corporation, are not legal deductions from gross income.

The loss of $177,800 on account of 3,232 shares of the capital stock of the East Providence Water Company is claimed on the basis that the indebtedness of the corporation to Sayles of $323,200, for the cancellation of which the stock was issued to him, had a value of $176,900 and that in addition to the cancellation of such indebtedness the decedent paid the corporation $900 in cash. The facts establish that the value of the indebtedness of the corporation to Sayles, for the cancellation of which this stock was issued, was $80,800. We find no proof that the decedent paid $900 in cash in this transaction.

The burden is on the plaintiffs who claim a loss under section 214 (a) (5) to show, in order to be entitled to the loss, that the transaction upon which it is based was one entered into for profit. In this case the estate has not shown this, but the evidence establishes the contrary. In Worcester Bank & Trust Co. et al., Adm'rs v. Com'r, 13 B. T. A. 630, the United States Board of Tax Appeals allowed a deduction as a loss on the cost of stock, which it was stipulated was worthless at the time of acquisition and at the close of the taxable years, upon the sole ground that the parties had stipulated that the stock was acquired as an "investment," stating that in view of this stipulation and the absence of any evidence in the record further to explain the circumstances under which the stock was acquired there was nothing to indicate that the acquisition was not a transaction for profit or to justify a finding to that effect. In W. H. Dail, Jr. v. Com'r, 19 B. T. A. 1036, the board allowed a loss on a transaction in the year in which it was entered into, but the proof there showed the taxpayer's dealings constituted a transaction entered into for profit. It cannot be assumed that every transaction is one that is entered into for profit under section 214 (a) (5), but this must be determined under the facts in each case and the record must establish that there was a transaction entered into for profit. In Edgar M. Carnrick v. Com'r, 21 B. T. A. 12, the United States Board of Tax Appeals pointed out this requirement, and one of the grounds for denying the loss there claimed was that there was nothing in the record to indicate that, even if there were a loss, there was a transaction entered into for profit, and in this connection the board said: "The statute has always confined deductible losses to certain carefully described classes, and the qualifications of these classes may not be ignored. The reasonable intendment of restricting non-business transactions resulting

in losses to such as were entered into for profit is that, since the intended profit would be taxable, the loss suffered instead should be deductible. When there is no intended profit and naturally could be none, there is no just demand for a deduction of a loss. Personal losses, except by theft and other occurrences provided in section 214 (a) (6), have never been broadly allowed by Congress to be deducted, and the provisions of section 214 (a) (5) should not be construed so broadly as to override this general legislative purpose. In a case such as this, the taxpayer seeking the deduction must prove in fact that the transaction resulting in the alleged loss was and reasonably might have been entered into for profit." The board further said: "An unfavorable purchase is not a realized loss." E. B. Stephenson v. Commissioner of Internal Revenue (C. C. A.) 43 F.(2d) 348. This opinion of the board is a proper construction of the statute and, as applied to the facts in this case, precludes the allowance of the deductions here claimed as losses on account of the stocks involved in these issues. See, also, Edward J. Cornish v. Com'r, 22 B. T. A. 474, in which the board held that where a taxpayer who had sold certain stock in 1922 and reacquired it in 1923 after it had become worthless in exchange for a note, the maker of which was entirely solvent, the taxpayer was not entitled to a deductible loss. The board held that under the circumstances the transaction was not one entered into for profit and again pointed out that no losses of a character other than those to which the statute specifically refers are provided for as allowable deductions from gross income and that transactions in a taxable year, to which the taxpayer may have been influenced by motives other than profit to himself, do not result in a deductible loss in that or any other year. See, also, Snider B. Ward v. Com'r, 18 B. T. A. 326, denying a loss on the ground that it was not sustained in trade or business, nor resulted from a transaction entered into for profit.

The last item of loss claimed is $243,579.33 for 1919 on 7,500 shares of common capital stock of Clarence Whitman & Co., Inc., the charter of which expired March 31, 1918, at which time the corporation passed into the hands of its directors as trustees in liquidation. The theory upon which this loss is claimed is that the difference between the cost of this stock to the decedent of $46.15 a share or $346,125 and $102,545.67, representing $90,000 paid to and received by the decedent as a dividend during 1919 on his

common stock and $12,545.67, which it is alleged was the maximum amount that he could receive at December 31, 1919, from the liquidation of the remaining tangible assets of the corporation, or $243,579.33, was the loss sustained by him upon the stock of this corporation.

The facts establish that the partnership of Clarence Whitman & Co. had a valuable good will, trade-name, and trade-marks, and that these intangibles were acquired by the corporation at the time of its organization on April 1, 1913. These intangibles are in addition to all intangibles in the form of good will, trade-name, and trade-marks of the Whitman Textile Company, which were also acquired by Clarence Whitman & Co., Inc.

The facts also establish that the corporation of Clarence Whitman & Co., Inc., at all times had a valuable good will, trade-name, and trade-marks. It further appears that at December 31, 1919, the date on which this loss is claimed, no disposition had been made of the good will or intangible assets of the corporation. It is clear from the evidence in this case that intangible assets of this character were very valuable in a business of the kind carried on by this corporation; and where there is no proof with respect to the value or lack of value on the particular date on which the loss is claimed, a loss through the liquidation of the corporation is not susceptible of determination even if it might be said that a stockholder may claim as a deduction from gross income a loss on liquidation of the corporation when the assets of the corporation have not been disposed of and its liabilities and expenses of liquidation have not been satisfied. For the reasons just stated, the loss of $243,579.33 for 1919 on account of 7,500 shares of common stock of Clarence Whitman & Co., Inc., must be denied. But we are of opinion that when it appears, as here, that it is reasonably certain that the stockholders will receive a further liquidating dividend, a loss may not be allowed under the taxing act until there is a distribution of such dividend in property or money. Until this is done the stock has a value to its owner, and the mere fact that because the corporation is in process of liquidation its value has declined in a particular taxable year to a figure which is less than cost does not entitle the stockholder to elect in which year he will take his loss. It often happens, as here, that the liquidation of a corporation extends over a period of years and a decision that a loss may be taken upon the basis of a valuation of the unliquidated assets and an estimate of the re-

512

maining liabilities and expenses would enable the taxing authorities to place the loss in a taxable year in which the taxpayer might have a very small income and would enable the taxpayer to select a taxable year in which to take the loss in which he might have a large income and thereby obtain a greater benefit from the loss.

■■■ Losses are sustained within the meaning of the taxing act when the events definitely occur which give rise thereto. Lewellyn, Collector v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538. If a loss is to be determined on the basis of a valuation or an estimate of the assets and liabilities of a corporation in liquidation, we fail to see why it should not be held that the loss is sustained in the taxable year in which the liquidation of the corporation begins rather than in some future year when a partial disposition of assets has been made. The statute allows the deduction of a loss when it has been sustained, and we think it is the clear purpose of the act to allow the deduction in the year in which it may appear that the taxpayer has received from the property all that it is possible for him to receive. A stock loss is no different from a loss on any other property, and if a taxpayer acquires property at a certain cost which has not been disposed of he may not take a deduction from gross income as a loss of any amount merely because it may appear that when the property is finally disposed of he will receive less than what he paid for it. Cf. New York Life Insurance Co. v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 70 L. Ed. 859; Corn Exchange Bank v. Com'r, 6 B. T. A. 158. Partial losses are not allowable as deductions from gross income so long as the stock has a value and has not been disposed of. Of course, where a corporation is in process of liquidation and there are assets of substantial value upon which large amounts may be realized by the liquidating trustees, a loss may be taken by the stockholder upon definite proof that outstanding liabilities and claims superior to those of the stockholder will more than absorb the maximum amount that can be received from the disposition of the assets, thereby leaving nothing for the stockholder. George C. Jones v. Com'r, 6 B. T. A. 451; W. W. Hanly v. Com'r, 6 B. T. A. 613. But such a situation is just the reverse of the claim presented by the plaintiffs in this case. The liquidation of Clarence Whitman & Co., Inc., was not completed until some time in 1923 or 1924, and the proof shows that upon final disposition of the assets and payment of the liabilities and expenses, the decedent's estate received a substantial amount although less than the amount with which the executor seeks to charge the decedent on December 31, 1919. It is true that this difference was not large, but we think the question whether the stockholder has sustained a deductible loss on his stock may not be made to depend upon an estimate by the liquidating trustees through a valuation of the assets and liabilities. The stockholder does not own the assets in the hands of the liquidating trustees, and a valuation thereof does no more than to fix the value of the stock.

The petition is dismissed. It is so ordered.

BOOTH, Chief Justice, and GREEN, Judge, concur.

WILLIAMS, Judge, dissents.

WHALEY, Judge, took no part in this decision, he having heard the case while commissioner of the court.