T.C. Memo. 2002-154

UNITED STATES TAX COURT

JOHN FAVIA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9585-00.                    Filed June 18, 2002.

<u>Lawrence A. Chez</u> and <u>Edward B. Chez</u>, for petitioner.

<u>Patricia Pierce Davis</u>, for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  For 1994, respondent determined a deficiency
in petitioner's Federal income tax and an accuracy-related
penalty as follows:

|  | | Accuracy-Related Penalty |
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6662(a)</u> |
| 1994 | $105,336 | $21,067 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issue for decision is whether petitioner has established that a $100,000 promissory note became worthless as of the end of 1994.

## Background

This case was submitted under Rule 122 on stipulated exhibits and without a trial.

At the time the petition was filed, petitioner resided in Chicago, Illinois.

On December 31, 1993, petitioner, a securities broker, entered into a note purchase agreement with Thinking Machines Corp. (TMC). In connection with the note purchase agreement, petitioner provided TMC with $100,000 in cash in exchange for a $100,000 promissory note from TMC. Under the terms of the promissory note, TMC was obligated to pay petitioner interest at 12 percent per year until the $100,000 principal amount of the promissory note becomes due on the earlier of March 31, 1995, or on the date of the closing of a public or private stock offering by TMC.

TMC was engaged in the design, development, manufacture, and marketing of high performance supercomputers and related

software.  Between 1991 and 1994, TMC had cumulative total revenues in excess of $289 million.

On August 17, 1994, however, TMC filed a voluntary petition for chapter 11 reorganization in the U.S. Bankruptcy Court for the District of Massachusetts (Bankruptcy Court).

On TMC's financial statements filed with the Bankruptcy Court, TMC listed total outstanding debts of approximately $34 million and total assets of approximately $56 million.

In July of 1995, petitioner and other creditors of TMC sought a declaration from the Bankruptcy Court that those creditors of TMC holding promissory notes from TMC accruing interest at 6 percent per year should be subordinated to those creditors of TMC holding promissory notes from TMC accruing interest at 12 percent per year.

For its year ending September 30, 1995, TMC reported on its financial statements $32.9 million in total revenues and $3.3 million in operating profit.

On February 8, 1996, the Bankruptcy Court confirmed a plan of reorganization for TMC, and, as part of TMC's reorganization plan, a Delaware corporation named OTM was organized as the successor to TMC.

As a result of TMC's plan of reorganization, petitioner received 2,284 shares of OTM common stock, 914 shares of OTM series A convertible preferred stock, and 326 OTM warrants for

additional shares of OTM stock.  The $100,000 promissory note
from TMC held by petitioner was canceled.

As of February 8, 1996, the effective date of TMC's
reorganization plan, OTM common stock had a per share par value
of $.001, and OTM series A convertible preferred stock had a per
share par value of $10.

Set forth below is a summary of the securities petitioner
received in cancellation of the $100,000 promissory note from
TMC:

| Securities Received | Shares Received | Par Value |
|---|---|---|
| OTM common stock | 2,284 | $    2 |
| OTM convertible preferred | 914 | 9,140 |
| OTM stock warrants | 326 | -- |

With the assistance of a certified public accountant in the
preparation of his 1994 Federal income tax return, petitioner
claimed thereon a $100,000 short-term capital loss relating to
the $100,000 TMC promissory note.

On audit, respondent determined that the $100,000 TMC
promissory note was not worthless as of the end of 1994, and
respondent disallowed petitioner's claimed $100,000 short-term
capital loss relating thereto.

## Discussion

Generally, a taxpayer owning a security, such as a corporate
promissory note, which constitutes a capital asset is entitled to

a capital loss in the year in which the security becomes worthless.  Sec. 165(g).

A mere shrinkage, however, in the value of a security does not give rise to a loss deduction for the taxpayer under section 165(a) if, on the date of the claimed loss, the security has any recognizable value.  Sec. 1.165-4(a), Income Tax Regs.

The worthlessness and the taxable year in which a security becomes worthless constitute questions of fact on which petitioner has the burden of proof.[1]  Boehm v. Commissioner, 326 U.S. 287, 294 (1945).

In order for a security to be treated as worthless, the security is required to have no present or foreseeable value.  In Morton v. Commissioner, 38 B.T.A. 1270, 1278-1279 (1938), affd. 112 F.2d 320 (7th Cir. 1940), we stated as follows:

> The ultimate value of stock, and
> conversely its worthlessness, will depend not
> only on its current liquidating value, but
> also on what value it may acquire in the
> future through the foreseeable operations of
> the corporation.  Both factors of value must
> be wiped out before we can definitely fix the
> loss.  If the assets of the corporation
> exceed its liabilities, the stock has a
> liquidating value.  If its assets are less
> than its liabilities but there is a

---

[1]  The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726, added sec. 7491, which in certain circumstances places the burden of proof on respondent.  Sec. 7491 is applicable, however, to court proceedings arising in connection with examinations commencing after July 22, 1998.  Accordingly, sec. 7491 is inapplicable to the instant case.

> reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and can not be said to be worthless. The loss of potential value, if it exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation.  [Id.]

Petitioner claims that by December 31, 1994, the $100,000 TMC promissory note had become worthless.

The financial statements filed by TMC with the Bankruptcy Court on August 17, 1994, indicated that as of August 17, 1994, TMC's assets exceeded its liabilities.  As of September 30, 1995, TMC's financial statements indicated that TMC would have had sufficient revenues to pay some of its liabilities as they became due.

Petitioner has not provided any credible evidence to establish that the value of TMC's stated assets was less than what was reported on TMC's financial statements or that TMC would not be able to pay any part of TMC's liabilities, specifically the $100,000 promissory note held by petitioner.

The OTM common stock, the convertible preferred stock, and the stock warrants that petitioner received had a par value of approximately $9,000 in February of 1996, indicating some continuing value as of early 1996 to the $100,000 TMC promissory note.

Furthermore, the participation by petitioner and by other creditors of TMC in the bankruptcy litigation in 1995 with regard to the status of the promissory notes from TMC is indicative that the $100,000 TMC promissory note did not become worthless at the end of 1994.

The evidence before us fails to establish that the $100,000 TMC promissory note was worthless as of the end of 1994.

Under section 6662, an accuracy-related penalty of 20 percent is imposed on any portion of an understatement of tax attributable to negligence or to disregard of Federal rules or regulations.  For purposes of section 6662(a), negligence constitutes a failure to make a reasonable attempt to comply with the Internal Revenue Code.  Sec. 6662(c).

The penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows reasonable cause and if the taxpayer acted in good faith with regard to the items giving rise to the underpayment.  Sec. 6664(c)(1).  Reasonable cause may be indicated by reliance in good faith on the advice of a tax professional.  United States v. Boyle, 469 U.S. 241, 250 (1985).

Based on the limited facts before us in this case, we conclude that petitioner is not liable for the accuracy-related penalty under section 6662.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.